

Joseph Lee Matalon
Partner
(212) 909-9675
jlmatalon@wmllp.com

1602 Lawrence Avenue/Suite 110
Ocean, New Jersey 07712

WWW.WMLLP.COM

November 11, 2022

**VIA ECF**

Honorable Stewart D. Aaron
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    Donguan Fengshang Industrial Company v. Soho Partners Group LLC, et al.
              22-CV-6275

Dear Judge Aaron:

      I represent defendants and respectfully make this application for an order vacating the Clerk's Certificate of Default filed on September 29, 2022 (DKT 41). To begin, none of the four defendants have ever properly been served, and accordingly they are not in default for failing to answer. Alternatively, even if the Court finds otherwise, there is good cause for vacating the default under F.R.Civ.P. 55(c) under all of the circumstances, including an agreement between counsel that plaintiff would vacate the default in exchange for defendant filing an answer and waiving service defenses within 21 days of the vacatur (such agreement now apparently being denied by plaintiff's attorney).

      This is an action by a factory in China against four defendants: three New York limited liability companies, and an individual. Plaintiff initially sued two entities with which it allegedly contracted. It then filed an amended complaint to add a third entity on an alter ego/piercing corporate veil theory, and the alleged owner of all of them, also on theories of alter ego/piercing, and fraud (no intent to perform) (DKT 15). In reality, plaintiff breached contractual arrangements by failing to deliver goods timely, and compounded the situation by submitting fraudulent shipping information. This resulted in substantial damages to the purchaser. Counterclaims will be filed at the appropriate time.

**None Of The Defendants Have Been Served**

      Service of process on a corporation, partnership or association is governed by F.R.Civ.P. 4(h), which provides that service may either be in accordance with Rule 4(e)(1)  -- which adopts state law methods – or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires— by also mailing a copy of each to the defendant...." The applicable state law is CPLR 311-a, which

Hon. Stewart D. Aaron
November 11, 2022
Page 2

requires delivery "personally" to any member of the LLC, if management is vested in its members; to the company's manager, if management is vested in one or more managers; to any agent authorized by appointment to receive process; or any other person designated by the company to receive process.  In addition, service may be made upon the Secretary of State under Section 303 of the NY Limited Liability Company Law.  See McHale v. Chase Home Finance LLC, 2020 WL 7711826 (E.D.N.Y. 2020) (describing authorized methods of service in a federal court action against a limited liability company).

As is evident from the filed Proofs of Service, none of the defendant LLCs were properly served, inasmuch as none of the recipients of process fall into any of the specified categories. The original defendants, Soho Partners Group, LLC and Michael Fashion Consulting LLC, were allegedly served on August 16, 2022 through the person of "Jamie Dyer who indicated they were the logistics employee, authorized to accept with identity confirmed by subject stating their name."  (DKT 24, DKT 25) Ms. Dyer, however, is a mere employee, and is not authorized by law, appointment or designation to receive process.  Similarly, the newly-added Ringerjeans LLC was allegedly served through "Nate James (assistant Manager) who indicated that they were the person authorized to accept with identity confirmed by subject stating their name."  Here too, Mr. James is not one of the high-level operatives specified in Rule 4(h) or CPLR 311-a, nor was he authorized by law or appointment to receive process.  On that score, we note that the employees' own alleged statements that they were "authorized to accept" does not establish that they were, in fact, authorized by the companies or law to accept process, and of course, an agent cannot create its own actual or apparent authority.  Fennel v. TOB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989) In sum, none of the defendant companies have been served.

Nor was Charles Azrak properly served.  Plaintiff is apparently relying on F.R.Civ.P. 4(e)(2)(B) or its state law analogue (incorporated into the federal rules by F.R.Civ.P. 4(e)(1)), CPLR 308(2).  Both provisions require delivery to a person of "suitable age and discretion" at the individual's "dwelling" or "usual place of abode."

The Proof of Service (DKT 29) does not even specify the address at which service upon Mr. Azrak was allegedly made, and for that reason alone should not have supported entry of a Certificate of Default.  Assuming the service address was as stated in affirmation of plaintiff's counsel (DKT 40, unnumbered paragraph on p. 2) ("Defendant Charles Azrak's residential address [is] 414 Ave. S, Brooklyn, NY 11223"), that was bad service.  414 Avenue S is where Mr. Azrak's parents live.  Although Mr. Azrak lived there with his wife temporarily from approximately January 2019 through August 2020, he then moved to a house at 1957 E. 1st Street in Brooklyn for a few months.  Since January 2021, Mr. Azrak has resided with his wife at 1888 Ocean Parkway, Brooklyn, New York.

In directing service at 414 Avenue S, plaintiff's counsel appears to have been relying on a May 23, 2019 declaration of Mr. Azrak in another case, in which Mr. Azrak stated that he lived at 414 Avenue S with his wife (DKT 13-5).  That was an accurate statement as of May 2019, but as noted, Mr. Azrak moved out in August 2020, and has lived in his own house at 1888 Ocean Parkway since January 2021.  Given that the suitable-age-and-discretion service was not

Hon. Stewart D. Aaron
November 11, 2022
Page 3

attempted at Mr. Azraks' "dwelling" or "usual place of abode," as required by F.R.Civ.P. 4(e)2(B) or CPLR 308(2), such service cannot support a default.[1]

This Court should reject any suggestion that that "actual knowledge" of the action, through improper service or otherwise, can sustain a default judgment.  See Bogle–Assegai v. Connecticut, 470 F.3d 498, 507–09 (2d Cir. 2006), cert. denied, 552 U.S. 1165 (2008); SEC v. China Northeast Petroleum Holdings, Ltd., 27 F.Supp.3d 379 (S.D.N.Y. 2014) ("a defendant's 'actual knowledge is no substitute for service") (citation omitted).

For these reasons, the Certificate Of Default should be vacated.

**There Is Good Cause To Vacate The Clerk's Certificate Of Default**

Prior to entry of judgment, Rule 55(c) permits vacatur of a default for "good cause."  And "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, 'good cause' and the criteria of the Rule 60(b) set aside should be construed generously. *See, e.g., Davis,* 713 F.2d at 915; *Meehan,* 652 F.2d at 277; 6 James W. Moore et al., *Moore's Federal Practice* ¶ 55.10[1], at 79 (2d ed. 1993). Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).

This action was commenced on July 25, 2022 (DKT 1), and service was first allegedly made on August 16 (DKT 31, 32).   On August 30, 2022, I sent an email to plaintiff's counsel, Ruoting Men, Esq., stating that "I will be representing defendants in the subject litigation.  Can we speak tomorrow?" (Exhibit A hereto).   We exchanged emails thereafter.   Nonetheless, without having a discussion with me as to why defendants had not filed an answer (that is, my belief that proper service was lacking), and without notice, on September 26, 2022, Mr. Men wrote to Judge Caproni to state that amended proofs of service had been filed earlier that day, and with the Court's permission, "Plaintiff will move for a Clerk's certificate of default by the end of this week."   (DKT 33) Mr. Men did *not* send a copy of the letter to me, despite knowing that I was counsel to all defendants.   Instead, the letter stated "Cc: Via ECF Counsel of Record" even though, as Mr. Men well knew, I had yet to file a notice of appearance, and therefore would not have received a copy of the letter via ECF.

On September 27, and again without notice to me, Mr. Men applied for a certificate of default (DKT 35).  After the default was entered by the Clerk, Mr. Men wrote to me on September 29 stating that he planned to file a motion for a default judgment, and asking, "Will

---

[1] Moreover, the notation on the Proof of Service that the unnamed recipient stated she was "the co-resident" has no evidentiary value.  First, it is rank hearsay.  More importantly, it is highly unlikely that the unidentified woman actually said that she was a "co-resident" of Mr. Azrak; people don't talk like that.  The likelihood is that she said that she lived at that address, which the process server translated into the term "co-resident" under the mistaken belief that Mr. Azrak lived there too.

you file appearance in this case? Is your client interested in settlement discussion." (Exhibit B hereto) I did file a Notice of Appearance later that day, (DKT 42, 43) and learned at that time that the clerk had already entered a default.

I then called Mr. Men and pointed out the service defects. He did not deny that service was improper upon the entities (and we joked that he should be entitled to a refund from the process server), but thought that service upon Mr. Azrak was proper, based on the 2019 declaration. I responded that Mr. Azrak did not live there, but that it would be a waste of resources to litigate over service issues. I proposed that we enter into a stipulation vacating the certificate of default, waiving service defenses, and providing 21 days to answer. Mr. Men said he would need to speak to his client and revert. (Of course, defendants could not file an answer with the default certificate outstanding.)

A few days later Mr. Men told me that his client was agreeable, but was more interested in settling the case, and wanted a settlement proposal. I did convey a settlement proposal, which was rejected by Mr. Men on October 20.

On Friday, October 21, Mr. Men and I received an email from Judge Caproni's law clerk stating that a conference was scheduled for October 28, that the joint case management plan and letter was overdue, and that we should file by the end of the day the required submissions or a letter indicating why the parties were unable to do so (entire trail is Exh. C hereto). Mr. Men forwarded the email to me with the comment that "We need to file a pre-conference submission today. Also, please respond to my yesterday's email regarding settlement discussion." I replied, "Please tell me what information you need from me for the pre-trial submission. I would also request 21 days to put in an answer[.]" Mr. Men responded, "Judge VEC has a fillable form. You may find it in the attachment. *You can fill in the dates you prefer. I don't think I will have any problem with the date you proposed."* He also noted that "We shall also submit a joint letter. *You can draft the letter*. I will review it and get back to you asap." In response, I pointed out that Judge Caproni's form offered the parties the opportunity to consent to a Magistrate Judge, that the SDNY magistrate judges are very good, and that defendants would be willing to consent. Mr. Men stated "[we] are fine with a magistrate." I offered to write to Judge Caproni's law clerk advising that the parties were going to consent to have the case heard by a Magistrate Judge and would file the consent form, and Mr. Men replied "Sure, that would be great, Thanks!" I did write to the clerk, and the consent was filed on Monday October 24 (DKT 44, 45).

At that juncture, and in light of the October 21 email exchange, there could be no doubt that plaintiff had agreed to vacate the default to litigate the case on the merits, in accordance with the parties' previous agreement.

On October 25, this Court scheduled a telephone conference for October 28 (DKT 46). I mistakenly overlooked that docket entry and did not appear for the conference. Apparently, Mr. Men did not advise the Court of the above correspondence and events, and now expressed a desire to seek a default judgment, because the Court entered an order stating that any motions for a default judgment or to vacate the default must be filed by November 11 (DKT 47).

Hon. Stewart D. Aaron
November 11, 2022
Page 5

There is good cause to vacate the default. Defendants never intended to default, but retained counsel to defend them. Moreover, defendants' reason for not filing an answer -- their belief that service was improper – is legitimate in the circumstances (even if mistaken – which we believe not to be the case). In addition, plaintiffs' counsel sought a default without giving known defense counsel notice of his intention to do so, which would have prompted defendants to file an answer and preserving service defenses. But because plaintiff persuaded the clerk to enter a default (despite the facial improper service as to at least three defendants), they have been unable to answer until the default is vacated. On that note, plaintiff's counsel indicated, both orally and in writing, that the default certificate would be vacated to enable litigation on the merits, but seems to have retreated from that commitment.

Other facts to take into account is that there would be no prejudice to plaintiff from vacating the default certificate, as this case is in the very early stages, and if there were in fact defaults, they occurred very recently. Moreover, defendants have meritorious defenses. The two new defendants, Ringerjeans and Mr. Azrak personally, are not parties to any contract with defendants, but have merely been named on "alter ego"-type theories to pressure a settlement. As to the original defendants, they suffered significant damages from plaintiff's own breach of contract, as will be made clear in the counterclaims.

Accordingly, in light of the strong policy of hearing cases on the merits, and if the Court determines that service was proper, defendants respectfully request that the default be vacated for good cause shown.

Respectfully,

*Joseph Lee Matalon*

Joseph Lee Matalon